[No. D041472. Fourth Dist., Div. One. July 27, 2004.]

LIDIA SNEED et al., Plaintiffs and Appellants, v.
RITA SAENZ, as Director, etc., et al., Defendants and Respondents.

COUNSEL

Sheppard, Mullin, Richter & Hampton, Edward D. Vogel, Karin Dougan Vogel; San Diego Volunteer Lawyer Program, Rosemary Bishop; Coalition of California Welfare Rights Organizations and Grace Gallagher for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Andrea Hoch, Chief Assistant Attorney General, James Humes, Assistant Attorney General, John H. Sanders and Jennifer A. Chmura, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**IRION, J.**—Plaintiffs Lidia Sneed and Cheryl Bell appeal a judgment in favor of defendants California Department of Social Services and its director, Rita Saenz, (together Department) after the court denied Sneed and Bell's petitions for ordinary and administrative mandamus and request for declaratory relief. In those proceedings, Sneed and Bell challenged Department's interpretation and implementation of the maximum family grant (MFG) statute (Welf. & Inst. Code,[1] § 11450.04) as applied to their families' ability to receive welfare cash assistance under the California Work Opportunity and Responsibility to Kids Act (CalWORKs) program (Stats. 1997 ch. 270, § 50).

■ In essence, the MFG statute denies an increase in the maximum aid cash payment, a dollar amount that ordinarily correlates with family size, if additional children are born to a family that has been on welfare for the previous 10 months. (§ 11450.04, subd. (a).) Sneed and Bell contend the court should have granted mandamus and declaratory relief because Department's regulations interpreting the MFG statute sanction families like theirs, who have additional children while on welfare but who also have nonwelfare income to support these additional children. Specifically, they assert Department's flawed interpretation of the MFG statute: (1) is inconsistent with the statute's plain language, statutory context and the stated purpose of California's welfare program; (2) greatly expands the scope of the penalty of the MFG statute; and (3) incorrectly reduces the cash grant for many poor families with their own nonwelfare income.

■ The MFG statute also provides that "child support" must be paid to the family and is not considered deductible income in calculating the amount of the cash grant. (§ 11450.04, subd. (e).) Department's regulations include as

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

"child support" a noncustodial parent's Social Security benefits paid on behalf of a child. Bell contends Department violated federal law by deducting her children's Social Security benefits from the family's cash grant without considering the children's needs. Bell and Sneed further contend Department's interpretation of "child support" as support only from a noncustodial parent violates their constitutional rights to privacy and equal protection.

We conclude Department correctly interpreted and implemented the MFG statute with respect to the welfare cash assistance to which Sneed and Bell were entitled. Adequate support for *all* of the needy children of California's working poor is a matter of priority; indeed, California spent most of the last decade experimenting with welfare reform under a series of federal Aid to Families with Dependent Children (AFDC) program waivers to try to break the cycle of welfare dependency and ensure economic security and self-sufficiency for California families. The culmination of California's efforts was the passage in 1997 of comprehensive welfare reform, including the creation and implementation of the CalWORKs program. We find nothing in the language of the applicable statutes, properly interpreted, nor any indicia of legislative intent, suggesting cash aid grants to families with MFG children are to be calculated under CalWORKs using the methodology employed under the repealed AFDC program. The California Legislature has addressed the cash assistance needs of California's working poor families—and done so in the context of welfare reform designed to insure the long term economic viability of the family unit. Any claim that the calculation of the cash aid component of public assistance denies California's MFG children adequate support must be directed to that body, not this court. Accordingly, we affirm the judgment.[2]

## BACKGROUND OF CALWORKS AND MFG RULE

For many years, the federal AFDC program provided cash assistance to poor families. (42 U.S.C. § 601, as in effect before Aug. 22, 1996; see *California Homeless & Housing Coalition v. Anderson* (1995) 31 Cal.App.4th 450, 453 [37 Cal.Rptr.2d 639].) States could not impose eligibility requirements or calculate welfare grants in a manner inconsistent with AFDC without risking loss of federal funding. (42 U.S.C. § 601.) To implement "experimental" provisions, states were required to seek federal waivers. (42 U.S.C. § 1315(a).)

When California began welfare reform efforts in 1991, the AFDC grant structure arguably was a disincentive to increasing the amount of a welfare

---

[2] Department's request for judicial notice of certain documents that were not part of the record in the trial court is denied.

recipient's income from work-related activities. The grant calculation methodology required subtracting the maximum aid payment (MAP), as provided in section 11450, subdivision (a), from the minimum basic standard of adequate care (MBSAC), an amount used to establish a family's eligibility for welfare benefits. Under AFDC, the MBSAC and MAP amounts were federally mandated and were the same dollar amount for families composed of an equal number of needy individuals. Under the AFDC cash grant calculation methodology, as family income increased, the welfare cash grant decreased dollar for dollar.[3]

In 1991 California created a work incentive for welfare recipients of AFDC, under federal waiver, by increasing the difference between the MBSAC and MAP each year between 1991 and 1997. This allowed families to keep more of their earnings before their welfare cash grant declined. Under the federal waiver, still in effect in 1994 when the MFG statute was enacted, the grant was the difference between (1) the MAP and (2) the MBSAC minus nonexempt or disregarded income.[4]

In 1994 the Legislature enacted section 11450.04, the MFG statute, which was intended to promote personal responsibility of welfare recipients by discouraging growth in family size while they received public assistance and by encouraging them, through work incentives, to support their families and thereby eliminate their dependence on welfare. The MFG statute freezes a family's maximum welfare cash benefit at the same level if additional children (referred to as MFG children) are born to a family that has been on welfare for the previous 10 months.[5] Thus, under the MFG statute, the MAP, a dollar amount that ordinarily increases with family size, does not increase when an MFG child is born. (§ 11450.04, subd. (a).) Although MFG children are not included in the assistance unit[6] for purposes of determining the MAP,

---

[3] This evidence was introduced in the trial court through the declaration of Bruce Wagstaff, Deputy Director of the Department's Welfare to Work Division, the agency charged with administering the CalWORKs and food stamp programs, and the AFDC program when it was in effect. Wagstaff was part of the welfare reform negotiating team that created Assembly Bill No. 1542, later enacted without modification, which repealed California's AFDC program and created CalWORKs. Sneed and Bell did not object to the admissibility of Wagstaff's declaration in the trial court. In any event, we may appropriately rely on his statements and views. (*California Homeless & Housing Coalition v. Anderson, supra*, 31 Cal.App.4th at pp. 461–462, fn. 13 [court could properly rely on statements of person responsible for federal oversight and administration of AFDC program].)

[4] In 1994, the year the MFG statute was enacted, the average family of three could retain the difference between the MBSAC ($723) and the MAP ($607), for a total of $116.

[5] The MFG statute contains exceptions for children conceived as a result of rape, incest or specific contraceptive failure. (§ 11450.04, subd. (b).)

[6] The assistance unit is composed of persons in the family who receive, or are eligible to receive, a welfare grant.

they are aid recipients for all other purposes.[7] The MFG statute refers to the MAP dollar amounts as set forth in section 11450, subdivision (a).

The MFG statute further provides that 100 percent of any child support payment received for an MFG child shall be paid to the assistance unit. The child support payment is not considered deductible income to the family for purposes of calculating the amount of cash aid for which the family is eligible. (§ 11450.04, subd. (e).)

In 1996 Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act, commonly known as the Welfare Reform Act. (Pub.L. No. 104-193 (Aug. 22, 1996) 110 Stat. 2105; see also *Arenas v. San Diego County Bd. of Supervisors* (2001) 93 Cal.App.4th 210, 213 [112 Cal.Rptr.2d 845] (*Arenas*).) Under the Welfare Reform Act, a program entitled Temporary Aid to Needy Families (TANF) provided states with block funding to distribute to needy families as each state saw fit. (*Arenas*, at p. 213; 42 U.S.C. § 601 et seq.) TANF replaced the federally funded AFDC program. (*Arenas*, at p. 213.) Under TANF, eligible state plans must limit the receipt of aid to a specified number of months and must include certain elements such as requiring aid recipients to engage in specified work activities. (42 U.S.C. §§ 607, 608.) Additionally, TANF requires the state to provide services relating to establishing or enforcing child support obligations with respect to each child receiving assistance. (42 U.S.C. § 654.)

In 1997, as part of a comprehensive review and overhaul of its welfare system, California created CalWORKs through which it administers TANF block grants. (Stats. 1997, ch. 270, § 50; Legis. Counsel's Dig., Assem. Bill No. 1542 (1997–1998 Reg. Sess.); Welf. & Inst. Code, § 11200 et seq.; *Arenas, supra*, 93 Cal.App.4th at p. 213.) Department is charged with administering CalWORKs. (§ 11209; see also *Fry v. Saenz* (2002) 98 Cal.App.4th 256, 260 [120 Cal.Rptr.2d 30].) Like the former AFDC program, CalWORKs provides cash grants to families with minor children who meet certain requirements, including limited income and resources, and are deprived of the support of one or both parents due to factors such as absence, disability or unemployment. (§ 11250, subds. (a)–(c); *Sheyko v. Saenz* (2003) 112 Cal.App.4th 675, 682 [5 Cal.Rptr.3d 350].) The Legislature stated the purposes of CalWORKs as follows: "The Legislature finds and declares that the family unit is of fundamental importance to society in nurturing its members, passing on values, averting potential social problems, and providing the secure structure in which citizens live out their lives. Each family unit has the *right and responsibility to*

---

[7] For example, an MFG child retains eligibility for Medi-Cal benefits, food stamps, homeless assistance, permanent shelter payments and special needs payments.

*provide for its own economic security by full participation in the work force to the extent possible.* Each family has the *right and responsibility to provide sufficient support and protection of its children,* to raise them according to its values and to provide every opportunity for educational and social progress." (§ 11205.)

Accordingly, "every county . . . shall administer this chapter in such a manner as to achieve the *greatest possible reduction of dependency* and *to promote the rehabilitation of recipients. . . .*" (§ 11207, italics added.)

As part of CalWORKs welfare reform, the Legislature abandoned the MBSAC as an element of the cash aid grant calculation. Instead, a new grant calculation methodology was created, designed to motivate welfare recipients to increase their work efforts. Under the new system, enacted in 1997 and still in effect, aid recipients who increase their work efforts and obtain greater employment income may retain more of the increased income before cash aid is affected.[8] Consistent with this new methodology, certain language in section 11450, subdivision (a) was amended to reflect that the MBSAC would no longer be used to determine the amount of cash aid paid. In all other respects, the MAP language in section 11450, subdivision (a) remained the same. As in the 1994 version, the MAP is used in the current cash aid calculation method, setting forth the maximum cash aid payment a family assistance unit can receive. (§ 11450, subd. (a).) Department implemented this legislation by adopting regulations in its Manual of Policy and Procedures (Regulations). (See *Sheyko v. Saenz, supra,* 112 Cal.App.4th at p. 679.)

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. *SNEED*

Sneed has two children living with her, each of whom has a different father. When the second child was born in April 1999, Sneed had been on public assistance continuously for the previous 10 months. Thus, the second child was considered an MFG child under section 11450.04. At the time, Sneed was receiving $505 a month in CalWORKs benefits for herself and her first child, but was later removed from the grant because of ineligibility not relevant here.

In August 1999, the father of the second child moved in with Sneed and her two children, and he was added to the assistance unit. Department included his estimated income (unemployment insurance benefits) in the

---

[8] For the average family of three, the parent retains the first $225 of earnings, plus half of all additional earnings. (§ 11451.5.)

computation of the grant amount payable to the Sneed family. In calculating the grant amount, Department used the MAP amount for a two-person family, consisting of the second child's father and Sneed's other child.

In an administrative proceeding, Sneed challenged Department's computation of the grant amount, claiming Department should have used the "family MAP"[9] for a three-person family, consisting of the second child, that child's father and Sneed's other child, to calculate the grant amount, with the two-person MAP serving only as a cap on the actual grant. Under this calculation, an additional $121 per month would have been allocated to this family. The administrative law judge's proposed decision found in favor of Sneed, but Department declined to adopt that decision and issued an alternate decision (§ 10959) denying Sneed's claim.

## B. *BELL*

Bell, who is employed, is married to the father of her three children. Bell had been on public assistance continuously for 10 months when her two youngest children, twins, were born in September 1999. Thus, they are MFG children. Because Bell's husband is disabled and receives Social Security benefits, he is not included in the assistance unit for CalWORKs. The MFG twins and Bell's other child receive Social Security benefits based on their father's disability.

In calculating Bell's benefits, Department treated the MFG twins' Social Security disability income as nonexempt income to the assistance unit. Accordingly, it made certain deductions from earned income, not relevant here, and then added the three children's Social Security benefits to determine total income counted against the cash aid payment. Department then subtracted this amount from the MAP for a family of two, consisting of Bell and her first child. The two-person MAP was initially $505 per month and later increased to $520 per month.

In an administrative hearing, Bell challenged Department's calculations, arguing: (1) the needs of the MFG twins should be considered in the family MAP calculation; (2) the MFG twins' Social Security disability benefits are not available income to the assistance unit because those benefits must be used exclusively for the MFG twins; and (3) the MFG twins' Social Security benefits are in the nature of child support and should be exempt income. Under Bell's calculation, the family would have received an additional $248 per month had the MFG twins been included in the family MAP. Had the

---

[9] The family MAP, part of Department's regulations, considers the income and needs of all family members, including those who are not included in the assistance unit, in determining a potential grant amount.

MFG twins' Social Security benefits of $62 been considered, the grant amount would have increased to $310 per month.

The administrative law judge upheld Department's calculation. In reviewing the administrative proceeding (§ 10959), Department concluded Bell's benefits were properly calculated and denied her claim.[10]

Sneed and Bell petitioned the superior court for writs of ordinary mandamus under Code of Civil Procedure section 1085 and administrative mandamus under Code of Civil Procedure section 1094.5, and further sought declaratory relief. After finding review was appropriate only by administrative mandamus, the court denied the petition and entered judgment in favor of Department.

## DISCUSSION

### I.

### *Standard of Review*

The parties agree on all material facts, but disagree as to the interpretation of the MFG rule and its application to the individual cases of Sneed and Bell. "Presented with pure questions of law, we review the trial court's decision de novo." (*Jackson v. Gourley* (2003) 105 Cal.App.4th 966, 970 [130 Cal.Rptr.2d 72]; *Fry v. Saenz, supra*, 98 Cal.App.4th at p. 262.)[11]

The construction of a statute by an administrative agency charged with its enforcement and interpretation "is entitled to consideration and respect by the courts." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 6, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha Corp.*) However, we must "independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning . . . . Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. [Citation.] Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative." (*Id.* at pp. 7–8; see also *Arenas, supra*, 93

---

[10] The administrative law judge also found there was no jurisdiction to hear Bell's claims for prior months. In its alternate decision, Department found the record lacked a finding as to whether Bell received adequate notice and thus declined to reach the jurisdictional issue.

[11] The standard of review is the same for traditional mandamus (Code Civ. Proc., § 1085) and administrative mandamus (*id.*, § 1094.5). (*Fry v. Saenz, supra*, 98 Cal.App.4th at p. 262; *Black v. Board of Trustees* (1996) 46 Cal.App.4th 493, 497 [54 Cal.Rptr.2d 140].)

Cal.App.4th at pp. 214–215.) Thus, we exercise our independent judgment in interpreting the MFG statute, while giving "presumptive value" to Department's views. (*Yamaha Corp.*, at pp. 7, 11.)

## II.

### Statutory Construction

"The function of the court in construing a statute 'is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as to give effect to all.' (Code Civ. Proc., § 1858.)" (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 492 [66 Cal.Rptr.2d 304, 940 P.2d 891].) If the language is clear and unambiguous, the plain meaning of the statute governs, and that meaning must be applied according to its terms. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196] (*Day*); *Ventura County Deputy Sheriffs' Assn.*, at p. 492.) When statutory construction is necessary, we carry out the intent of the Legislature to the fullest extent possible. (Code Civ. Proc., § 1859; *Parris v. Zolin* (1996) 12 Cal.4th 839, 845 [50 Cal.Rptr.2d 109, 911 P.2d 9].) Further, we examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) In construing a statute to comport with the Legislature's apparent intent, we strive to promote rather than defeat the general purpose of the statute and avoid an interpretation that would lead to absurd consequences. (*Jacobs v. Grossmont Hospital* (2003) 108 Cal.App.4th 69, 75 [133 Cal.Rptr.2d 9]; *Day*, at p. 272.)

## III.

### The MFG Statute

Sneed and Bell contend Department's erroneous interpretation of the MFG statute, sanctioned by the trial court, ignores the needs of the MFG child while taking full advantage of the family's nonwelfare income to reduce the cash aid payment to the family. They argue that under a proper interpretation of the MFG statute, the MAP set forth in section 11450, subdivision (a) provides only a cap on a *potential* grant amount, not the actual grant amount. They seek a calculation methodology similar but not identical to the one used under the 1994 MAP statute (former § 11450, subd. (a)) that included the MFG child in the assistance unit when determining the dollar starting point

for calculating the cash grant. Using this methodology would result in a greater cash grant because the MFG child would be counted in the assistance unit.

## A.

### *The MFG Statute Refers to the MAP, Not to the Methodology of Grant Calculation*

█ Before resorting to extrinsic sources for construing the MFG statute, we examine the statutory language, giving the words their usual and ordinary meaning. (*Day, supra,* 25 Cal.4th at p. 272.) The MFG statute, unchanged since its enactment in 1994, provides: *"For purposes of determining the maximum aid payment [MAP] specified in subdivision (a) of Section 11450 and for no other purpose, the number of needy persons in the same family shall not be increased for any [MFG] child . . . ."* (§ 11450.04, subd. (a), italics added.) █ The MFG statute refers only to the "maximum aid payment" a family assistance unit can receive, a dollar amount that varies according to the number of needy persons in the home, as set forth in the table in section 11450, subdivision (a).[12] The MFG statute does not refer to the actual amount of aid paid or to any particular methodology for computing grant amounts. (§ 11450.04, subd. (a).) Nothing in the MFG statute limits, controls or directs the manner in which the MAP dollar amount is to be used to calculate the family's CalWORKs grant. Thus, contrary to Sneed and Bell's position, the MFG statute's reference to "subdivision (a) of Section 11450" does not require any particular cash aid calculation methodology, including one that is a "starting point" or that sets only a cap on a "potential" grant amount.

█ Consistent with the language of the MFG statute and its reference to section 11450, subdivision (a), Department's regulations provide that an MFG child "shall not be included in the [assistance unit] size for the purpose of determining the MAP." (Regs., § 44-314.2.) Just as in the MFG statute, the regulations exclude an MFG child from the number of "needy persons" in the MAP table of section 11450, subdivision (a), and the MFG child's family is not entitled to a higher MAP nor to a greater cash payment after that child's birth. (Regs., § 44-314.2.)

█ Sneed and Bell argue this interpretation is inconsistent with the statutory language "and for no other purpose." (§ 11450.04, subd. (a).) They suggest

---

[12] The table referred to in section 11450, subdivision (a) sets forth the MAP based on the number of eligible needy persons in the same home. Although section 11450, subdivision (a) was amended every year between 1991 and 1998, the dollar MAP has remained the same for a given number of eligible needy persons in the same home.

this limiting language means the MFG child is a "needy person" in the family for every purpose other than computing the MAP, including the MBSAC cash aid calculation referred to in the 1994 version of section 11450, subdivision (a). However, giving the words of the statute their usual and ordinary meaning in the context of the MFG statute, the limiting language "and for no other purpose" excludes the MFG child from the number of needy persons *only* when determining the MAP as set forth in section 11450, subdivision (a). Having been excluded for that purpose only, the MFG child remains in the assistance unit and receives other CalWORKs aid, including food stamps and Medi-Cal benefits. Similarly, Department's regulations clarify an MFG child "is eligible for and a recipient of aid including special needs."[13] (Regs., § 44-314.6.) In this regard, the MFG statute does not deny benefits to an MFG child.

Although we agree with Sneed and Bell that an MFG child is added to the assistance unit for purposes other than determining the MAP, we disagree that the language "and for no other purpose" means the MFG child is included in the calculation of the actual cash aid payment. Such an interpretation would nullify the MFG statute by increasing cash benefits for families with MFG children by including the MFG children in the cash aid calculation when the MFG statute expressly excludes them for this purpose. Moreover, the interpretation Sneed and Bell urge is inconsistent with the manifest purpose of the MFG statute under CalWORKs to promote personal responsibility and encourage increased work efforts with a goal of eliminating a family's dependence on public assistance. (§ 11205.)

B.

*The Palermo Rule of Statutory Construction*

Citing a rule of statutory construction applied in *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58–59 [195 P.2d 1] (*Palermo*), Sneed and Bell contend the MFG statute (§ 11450.04) must be interpreted to incorporate the MAP statute (§ 11450, subd. (a)) as the MAP statute read in 1994 when the MFG statute was enacted, rather than as the MAP statute currently reads. They assert that under the prior version of the MAP statute, the MFG child must be added to the assistance unit for purposes of calculating the grant amount based on the difference between the MBSAC and the MAP.

As we previously discussed, the MFG statute does not refer to or control the methodology of grant calculations, but instead refers only to the dollar

---

[13] In implementing the MFG statute, Department explained the MFG child was entitled to all benefits not derived from the MAP.

amount of the MAP as set forth in section 11450, subdivision (a). The MAP table of dollar amounts is the same in both the 1994 and 1997 versions of the statute. Thus, applying the 1994 version of section 11450, subdivision (a) does not advance Sneed and Bell's argument. Even were we to construe the statute in the manner suggested by Sneed and Bell, the rule of statutory construction in *Palermo* does not entitle them to the calculation they seek.

In *Palermo, supra*, 32 Cal.2d at pages 55–56, the plaintiff entered into a lease agreement, signed under the Alien Land Act (the Act), with a Japanese national. The Act allowed such leases if they were made in accordance with "any treaty now existing" between the United States and Japan. (*Id.* at p. 55.) The plaintiff sought to invalidate the lease when the treaty with Japan was abrogated. (*Id.* at pp. 56–57.) The issue before the court was whether the Act should be interpreted as referring to the treaty as it existed when the Act was adopted, or as referring to later modifications or repeals. The court held the lease was still valid because the Act referred to the treaty as it existed when the Act was passed (i.e., "now existing"), not as it was later modified or repealed. (*Id.* at p. 60.) In so concluding, the court stated the following rule of statutory construction: " '[W]here a statute adopts by specific reference the provisions of another statute, . . . such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and . . . the repeal of the provisions referred to does not affect the adopting statute, *in the absence of a clearly expressed intention to the contrary*." (*Id.* at pp. 58–59, italics added.) The Supreme Court later clarified the *Palermo* rule by explaining: "Moreover, where the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation, 'the determining factor will be . . . legislative intent . . . .' [Citation.]" (*In re Jovan B.* (1993) 6 Cal.4th 801, 816 [25 Cal.Rptr.2d 428, 863 P.2d 673]; see also *People v. Frawley* (2000) 82 Cal.App.4th 784, 794 [98 Cal Rptr. 2d 555]; *People v. Pecci* (1999) 72 Cal.App.4th 1500, 1505 [86 Cal.Rptr.2d 43]; *People v. Domagalski* (1989) 214 Cal.App.3d 1380, 1386 [263 Cal.Rptr. 249].)

Here, unlike *Palermo,* the MFG statute did not specifically "adopt" the MAP statute in a time-specific way. Even were we to conclude the MFG statute is unclear in this regard, the historical context of welfare reform generally and the legislative intent behind the 1997 amendment to section 11450, subdivision (a) show the Legislature could not have reasonably intended to freeze the law regarding the calculation methodology for CalWORKs cash aid payments by reference to the calculation methodology under a welfare program (AFDC) no longer in existence.

In 1994 section 11450, subdivision (a) provided in part: "Aid shall be paid for each needy family . . . . In determining the amount of aid paid, . . . the

family's income, exclusive of any amounts considered exempt . . . shall be deducted from the sum specified in . . . Section 11452 . . . ." Section 11452 set forth a schedule for determining the MBSAC based on the number of persons in the assistance unit, which then included the MFG child. (*Id.*, subd. (a)(2).) The MBSAC was used at that time as the starting point for computing the actual cash grant for families with nonwelfare income. (*Ibid.*) Qualifying families would start with the MBSAC amount set forth in section 11452, subdivision (a)(2) and exempt the amount of nonwelfare income that was the difference between the MBSAC and the MAP, as well as other income disregards not relevant here, before the family's income was counted against the cash grant. If the MBSAC minus any nonwelfare income still exceeded the MAP, the MAP would be a cap on the grant amount. (§ 11450, subd. (a).)

The 1994 version of section 11450, subdivision (a) that Sneed and Bell seek to apply was in effect under the former AFDC program when states were required to impose eligibility requirements and calculate welfare grants in a manner consistent with AFDC in order to maintain federal funding. (42 U.S.C. § 601.) During this time, California was required to seek federal waivers to implement its "experimental" welfare reform provisions. (42 U.S.C. § 1315.) The AFDC program contained a complex calculation for determining the amount of earned income a parent on aid could "disregard," such that those earnings would not be counted against the aid payment. (Sen. Health & Human Serv. Com., Analysis of Assem. Bill No. 1542 (1997–1998 Reg. Sess.) as amended Aug. 4, 1997, p. 11.) The primary intent of the former calculation method was to provide an incentive for adult recipients to obtain employment by allowing this disregard of a portion of their earnings. (*Ibid.*)

In 1997 the California Senate Health and Human Services Committee analyzed several amendments implementing TANF, the federal law that replaced AFDC. The stated purpose of the amendments was welfare reform. (Sen. Health & Human Serv. Com., Analysis of Assem. Bill No. 1542 (1997–1998 Reg. Sess.) as amended Aug. 4, 1997, pp. 1–2.) One such amendment was to the methodology for calculating the amount of cash aid paid as set forth in section 11450, subdivision (a) as a means of encouraging CalWORKs recipients to increase their work efforts and thereby increase the amount of income available to their families. (Sen. Health & Human Serv. Com., Analysis of Assem. Bill No. 1542 (1997–1998 Reg. Sess.) as amended Aug. 4, 1997, pp. 11–12.)

As amended, section 11450, subdivision (a) provides in part: "In determining the amount of aid paid, *and notwithstanding the minimum basic standards of adequate care [MBSAC] specified in Section 11452*, the family's income, exclusive of any amounts considered exempt . . . shall be deducted from the

sum specified *in the following table* . . . . In no case shall the amount of aid paid for each month exceed the sum specified in the following table, as adjusted for cost-of-living increases . . . plus any special needs . . . ." (Italics added.)

The italicized language reflects the legislative changes to section 11450, subdivision (a) that establish a simplified income disregard. The intent of this change was to provide a greater, more advantageous work incentive, one that rewards additional work efforts and gives welfare recipients a better understanding of the impact that *increased earnings* have on the income of the family and the amount of the grant payment. (Assem. Floor Com., Conc. in Sen. Amends., Assem. Bill No. 1542 (1997–1998 Reg. Sess.), as amended Aug. 4, 1997, p. 5.) Whereas the former AFDC program included smaller income disregards and a complex grant calculation method that allowed families to keep income up to the MBSAC standard,[14] the new program's method provides a direct correlation between a family's increased work efforts and the ability to retain more of the increase in its income. This simplified grant calculation method was designed to create a greater incentive for welfare recipients to earn additional income and thus to assist families in becoming self-sufficient more quickly. In this regard, the amendment to section 11450, subdivision (a) eliminating the reference to the MBSAC and instead providing a different calculation methodology within the framework of CalWORKs was a deliberate policy choice about how work affects the family unit's financial viability.

We further note that at the time of California's comprehensive welfare reform, the Legislature reviewed various statutes adopted during the time the AFDC program was in effect and either repealed, amended or continued those laws as part of the new CalWORKs program. Had the Legislature intended to amend the MFG statute to specify a particular grant calculation methodology, it could have done so.

Applying *Palermo*'s rule of statutory construction, we conclude the Legislature, by its use of the language "notwithstanding the minimum basic standards of adequate care [MBSAC] specified in section 11452," clearly expressed its intent that the MFG statute incorporates the provisions of section 11450, subdivision (a) in the form in which they were subsequently modified. "[T]he Legislature is presumed to have meant what it said, and the plain meaning of the language governs." (*People v. Pecci, supra,* 72 Cal.App.4th at p. 1505.) In the context of the overall legislative scheme of

---

[14] After the AFDC program was repealed, the MBSAC was retained for the limited purpose of determining whether an applicant for CalWORKs has too much income to be eligible for the program.

welfare reform to encourage increased work efforts and eventual self-sufficiency, this clear language eliminates a calculation methodology based on the difference between the MBSAC and the MAP that was appropriate only under the former AFDC program when federal waivers were required to implement experimental programs for welfare reform. Sneed and Bell are not entitled to a calculation—the lesser of the MAP and MBSAC minus nonexempt or disregarded income—under a program that no longer exists.[15] Rather, MFG families like those of Sneed and Bell are subject to current grant calculation methods.

## C.

### *Family MAP*

Sneed and Bell contend Department's regulations provide a framework for properly calculating their cash payments under a correct interpretation of the MFG statute by using a "family MAP." (Regs., § 44-315.31.) They suggest Department can use this process for calculating grants to MFG families by *slightly modifying* its regulations.

The concept of family MAP is not found in any statute and is separate and distinct from the MAP set forth in section 11450, subdivision (a). Department's regulations apply a family MAP in limited circumstances where the income of an individual *not* in the assistance unit is considered income to the assistance unit. (Regs., § 44-315.31.) The individual who is not in the assistance unit is "deemed" part of the assistance unit for determining the family MAP, usually because that individual has income that can be applied by law to the support of the aided person. Family MAP was developed as part of CalWORKs to simplify the way "deeming" had been used under AFDC.

This limited application of a family MAP does not include MFG children. In "deeming" situations, the individual with income is not in the assistance unit. The MFG child *is* in the assistance unit for all purposes except the MAP. Thus, no statutory or regulatory basis exists for using a family MAP in calculating grants for MFG families.

---

[15] Sneed and Bell cite Department's waiver requests and implementation guidelines, made before the adoption of the new grant calculation methodology in CalWORKs, to show they contradict Department's current interpretation of the MFG statute. However, Department's statements in those documents reflect the grant calculation method and income disregards applicable at the time under the former AFDC program when federal waivers were required. Thus, these statements provide no support for Sneed and Bell's argument they are entitled to the calculation methodology as it existed in 1994.

## D.

### *MFG Rule Applies to All Welfare Recipients*

Sneed and Bell contend the Legislature did not intend the MFG statute to apply to families like theirs who have nonwelfare income to support their MFG children. They assert the purpose of the MFG rule was to sanction "hard-core" welfare recipients with no ties to the work force.

■ The MFG statute, by its terms, applies to all welfare recipients regardless of their employment or income status, when that family has received aid under CalWORKs for the required number of months. (§ 11450.04, subd. (a).) All applicants for assistance under CalWORKs must be notified in writing of the provisions of the MFG rule. (*Id.*, subd. (f).) As reflected in the history of California's welfare reform and the Legislature's intent to promote personal responsibility and encourage families with an MFG child to increase their work effort to support that child, the MFG rule affects all aid recipients equally—those with earned income and those with no earned income. Indeed, one of the stated goals of CalWORKs was to encourage parents who *do* work to increase their work efforts to the point of self-sufficiency. (§ 11250.) Nothing in the statutory scheme supports the argument that only welfare beneficiaries with no earned income were the intended targets of the MFG statute.

## E.

### *Conclusion*

The intent of the MFG statute and the broader CalWORKs welfare reform provisions is the same: to increase personal responsibility and encourage financial self-sufficiency for families. The MFG statute furthers this purpose by not increasing the cash grant for an additional child born to a family on welfare for the previous 10 months. At the same time, CalWORKs provides increased education and training, greater work incentives and time limits on aid. CalWORKs allows more generous income disregards for all CalWORKs recipients, including MFG families, and replaces the MBSAC work incentive with a more advantageous one that encourages MFG families to work by allowing them to retain more of their increased income to support the MFG child. This increased work incentive, unlike the former one based on the difference between the MBSAC and the MAP, is more appropriate in a time-limited welfare-to-work environment where achieving self-sufficiency is imperative.

Nothing in the statutory scheme or the legislative history of welfare reform shows the cash grants of MFG families must be calculated using the 1994

methodology under a welfare program (AFDC) no longer in effect. At the time of the comprehensive CalWORKs amendments, including the amendment to section 11450, subdivision (a), the Legislature could have revised the MFG statute to specify a particular grant calculation methodology. Because the Legislature did not do so, the MFG statute must be read as freezing the MAP dollar amount at the level before the MFG child was born.

The legislative reform of the welfare system and the resulting implementation of the CalWORKs program make clear the Legislature intended the current version of section 11450, subdivision (a) to apply to all grant calculations, including those for MFG families. This interpretation is consistent with the legislative goals of gradually reducing the cash grant, while allowing a family's income to increase without being discounted, as the family works toward becoming self-sufficient. In this regard, the MFG child benefits by the total increase in family income. We conclude Department properly calculated Sneed's and Bell's benefits under the MFG statute.

IV.

*Deducting Bell's MFG Twins' Social Security Benefits from the Family's CalWORKs Grant*

Bell contends Department violated federal law by deducting the MFG twins' Social Security benefits from the family's CalWORKs grant without considering the MFG twins' needs. She asserts that Department's interpretation of the MFG statute prevents her, as the representative payee, from spending her MFG twins' Social Security payments for their use and benefit as required by federal statute.

A.

*Social Security Income*

Under title II of the Social Security Act (42 U.S.C. § 401 et seq.), benefits are paid on behalf of a wage earner who pays into the Social Security system. Such benefits are also paid on behalf of the wage earner's dependents for purposes of providing support. (*Jimenez v. Weinberger* (1974) 417 U.S. 628, 634 [41 L.Ed.2d 363, 94 S.Ct. 2496].) Minor dependents receive their benefits through a representative payee, who by statute must spend the funds for the "use and benefit" of the child and in the child's best interests. (42 U.S.C. § 405(j); 20 C.F.R. § 404.2035(a).) "Use and benefit" means for the current maintenance of the child. (See *Washington State Dept. of Social and*

*Health Servs. v. Guardianship Estate of Keffeler* (2003) 537 U.S. 371, 386 [154 L.Ed.2d 972, 123 S.Ct. 1017]; 20 C.F.R. § 404.2040(a).)

Federal law under TANF authorizes each state to determine how the welfare benefit is calculated and what income to include in that calculation. California law requires Social Security benefits to be included in determining the CalWORKs grant amount. (Fam. Code, § 4504.) Nothing in CalWORKs, or the MFG statute, conflicts with the federal requirement that Social Security payments be spent for the use and benefit of the beneficiary. Further, including Social Security payments in the grant calculation does not deprive MFG children of the use and benefit of those payments. Department does not mandate how the benefits must be spent and Bell must still use them for the current maintenance of the MFG twins.

### B.

*Social Security Must Be Included in Grant Calculation*

Bell asserts federal law prohibits using Social Security payments in the grant calculation because Congress intended to protect such government benefits from being diluted by offsetting them against benefits from other sources. In support of this assertion, Bell cites *Rose v. Arkansas State Police* (1986) 479 U.S. 1 [93 L.Ed.2d 183, 107 S.Ct. 334] and *Raskin v. Moran* (7th Cir. 1982) 684 F.2d 472. However, in those cases, a federal statute expressly provided that the government benefits at issue could not be used to reduce other benefit payments. Here, in contrast, there is no federal statute showing Congress intended Social Security benefits to be protected from a welfare grant calculation offset.[16] California law requires that income of all members of the assistance unit be included in determining the welfare benefit amount and MFG children are included in the assistance unit other than for purposes of MAP. (Regs., §§ 44-314.6, 44-314.61.) Thus, contrary to Bell's position, Department's interpretation of the MFG statute does not conflict with the fundamental purpose of the Social Security law to provide for workers' dependents.

---

[16] Under the former AFDC program, Social Security payments were considered as available income and included in the welfare benefit calculation: "[W]e do not consider it inappropriate for a representative payee to make the benefit payments available to the AFDC assistance unit." (20 C.F.R. § 404.2040(a)(2).)

## V.

### *Social Security Dependents' Benefits Are Not Exempt as Child Support*

The MFG statute provides that "child support" paid for an MFG child must be paid to the family and is not considered deductible income in calculating the grant. (§ 11450.04, subd. (e).)[17] Department's regulations define title II Social Security benefits as child support when the wage earner/parent is absent from the home. (Regs., § 44-314.621.) Bell contends the MFG twins' Social Security benefits should be exempt from consideration as child support under the MFG statute, even when the disabled parent is not absent from the home.

### A.

### *Definition of "Child Support"*

The MFG statute does not define "child support." In the absence of a specific statutory definition, we look to other relevant sources and give the term its ordinary, generally accepted, usual and common sense meaning. (*Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1474 [1 Cal.Rptr.3d 185]; *Schnyder v. State Bd. of Equalization* (2002) 101 Cal.App.4th 538, 545 [124 Cal.Rptr.2d 571].) When the technical legal meaning and the common meaning of the term coincide, we adhere to the common meaning unless there is some indication the Legislature intended otherwise. (*Sousa v. First California Co.* (1950) 101 Cal.App.2d 533, 540 [225 P.2d 955].)

"Child support," as used in a custody or marital dissolution action, is "2. . . . money legally owed by one parent to the other for the expenses incurred for children of the marriage." (Black's Law Dict. (8th ed. 2004) p. 257.) " 'Child support' " is defined in title 22 of the California Code of Regulations as including court-ordered payments by a *noncustodial* parent for a child's maintenance by the custodial parent. (Cal. Code Regs., tit. 22, § 110129.)

The Family Code contains numerous references, including those in the CalWORKs context, to "child support" as payments by a *noncustodial* parent to the custodial parent for the child's support and maintenance. Noncustodial parents are obligated to make payments to the local child support agency for children receiving aid under CalWORKs. (Fam. Code, § 17402.)

---

[17] Similarly, Department's regulations require child support paid for an MFG child to be paid to the family, and exempt such support from consideration as income in calculating the grant. (Regs., § 44-314.62.)

Courts must order *noncustodial* parents to pay child support when custody is granted to a parent who is receiving or likely to receive public assistance. (*Id.,* § 3029.) Certain government benefits, including Social Security benefits, paid because of a *noncustodial* parent's retirement or disability, are counted as child support. (Fam. Code, § 4504, subd. (b).)

 The MFG statute does not exempt the income of parents living with an MFG child. Section 11008.14 expressly provides the income of parents "living in the same home with an eligible child shall be considered available . . . for purposes of eligibility determination and grant computation." Had the Legislature intended to exempt the income of an MFG child's custodial parent for the purpose of calculating the grant payment, it would not have limited the income exemption in the MFG statute to "child support" where the well-recognized and common meaning of that term is support by a noncustodial parent.

Department's definition of "child support" is consistent with the statutory, dictionary and common definition of that term requiring payment of support by a *noncustodial parent*. Because the MFG twins' Social Security income was paid on behalf of a *custodial* parent, not one absent from the home, that income could not be excluded as "child support" under the MFG statute.

B.

*Definition of "Child Support" Is Consistent with Legislative*
*Intent*

 Department's definition of "child support" is also consistent with legislative intent. Federal laws condition a state's participation in the TANF program on the establishment and operation of child support enforcement systems. (42 U.S.C. § 654; *Kansas v. U.S.* (10th Cir. 2000) 214 F.3d 1196.) Thus, in order to retain eligibility for federal funding of public assistance and child support enforcement programs, California is required to adhere to the statewide uniform child support guidelines. (Fam. Code, § 4050 et seq.; *In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1013 [112 Cal.Rptr.2d 378].) The Family Code implements federal law requiring California to provide services for enforcing child support obligations with respect to each child for whom assistance is provided under CalWORKs. (Fam. Code, §§ 17200, 17202.)

 To receive CalWORKs, a child must be deprived of a parent's support. (§ 11250.) Indeed, a noncustodial parent is one whose absence triggers a child's eligibility for welfare benefits. (See *County of Yolo v. Worrell* (1989) 208 Cal.App.3d 471, 477 [256 Cal.Rptr. 259]; see also *County*

*of San Diego v. Lamb* (1998) 63 Cal.App.4th 845, 850 [73 Cal.Rptr.2d 912] [section 11350 authorizes county to seek reimbursement from noncustodial or absent parent for welfare benefits paid on behalf of needy child].) The custodial parent must assign child support payments to the county and state, up to the amount of welfare paid. Child support collected from the noncustodial parent is then paid to the county welfare department, not to the custodial parent, to reimburse the governmental entity for welfare payments made to the family. (§ 11477.) The basis for child support assignment to the county welfare department is the receipt of aid by the custodial parent for the child for whom the support was paid. That basis does not exist for the MFG child because the assistance unit's MAP does not increase for the MFG child. Consequently, the MFG statute requires child support to be paid to the assistance unit without being considered as deductible income to the family for purposes of calculating the amount of cash aid payable to the family. (§ 11450.04, subd. (e).) Without this child support exemption, a parent receiving aid would be assigning the right to receive child support for the MFG child to the county for reimbursement purposes but would never have actually received any additional cash aid for that child because of the operation of the MFG statute.

One of the goals of the MFG rule is to encourage parents on welfare to increase their work efforts to support additional children they have while on welfare. Allowing child support payments to go directly to the family and excluding these payments from consideration as income for purposes of calculating the aid payment furthers that goal.

### C.

*Social Security Payments on Behalf of Custodial Parent Are*
*Nonexempt Income*

Family Code section 4504 provides that if a court has ordered a noncustodial parent to pay child support, certain government payments are credited toward the noncustodial parent's obligation. Listed in that statute are Social Security payments based on the noncustodial parent's retirement or disability. (*Ibid.*)

Department implemented this provision for MFG families by an "All [San Diego] County Letter" issued in accordance with a stipulated judgment that related to the treatment of child support payments in a CalWORKs case for a child subject to the MFG rule. The All County Letter clarified that the payments listed in Family Code section 4504, including Social Security payments based on a noncustodial parent's retirement or disability, are "child support" for purposes of the MFG statute.

■ As we previously discussed, income of all members of the assistance unit must be included in determining the cash aid amount. (Regs., §§ 44-314.6, 44-314.61.) A Social Security disability payment is received in lieu of earned income, in recognition that the recipient cannot work, and thus it must be treated as income for purposes of calculating the assistance unit's cash aid payment. (See *Jimenez v. Weinberger, supra,* 417 U.S. at p. 634 [primary purpose of Social Security provisions pertaining to child's benefits is to provide support for dependents of disabled wage earner].) Contrary to Bell's argument, Social Security disability payments to an MFG child on behalf of a disabled custodial parent cannot be considered child support. Family Code section 4504 is expressly limited to payments from noncustodial parents.

## VI.

### *Constitutional Rights to Privacy and Equal Protection*

Sneed and Bell contend Department's interpretation of the child support provision of the MFG statute violates their rights to privacy and equal protection because it computes grants based on child support coming from a custodial parent differently from child support coming from a noncustodial parent. They assert their families would have been allowed to allocate a potion of their nonwelfare income to the MFG children if the fathers had not been living in the home.[18] Thus, they argue, Department's interpretation of the MFG law penalizes them financially for having an intact family.

### A.

### *Equal Protection*

■ Equal protection is not violated by a legislative scheme that distinguishes between different groups of persons if the classification bears a rational relationship to a legitimate public purpose. (*People v. Acuna* (2000) 77 Cal.App.4th 1056, 1061 [92 Cal.Rptr.2d 224].) "Only when the classification jeopardizes the exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic is the statute subject to the heightened review employed in strict scrutiny test." (*People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 448 [104 Cal.Rptr.2d 618].)

---

[18] Sneed claims her MFG child would have been entitled to some child support payments had the MFG child's father lived outside the home. Bell claims her MFG twins would have been entitled to Social Security benefits that would have been exempt as child support had their father been absent.

■ The rational basis standard applies to equal protection challenges of economic and social welfare legislation under both the federal and state Constitutions. (See, e.g., *Dandridge v. Williams* (1970) 397 U.S. 471, 485–486 [25 L.Ed.2d 491, 90 S.Ct. 1153] [maximum AFDC grant limitation]; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 16–17 [112 Cal.Rptr. 786, 520 P.2d 10]; *City and County of San Francisco v. Freeman* (1999) 71 Cal.App.4th 869, 872–874 [84 Cal.Rptr.2d 132] [challenges involving public aid and child support].) When, as here, there is no suspect classification and no fundamental right is involved, we evaluate the classification under the " 'rational basis' " test and determine only if the classification "bears a fair relationship to a legitimate public purpose." (*In re Evans* (1996) 49 Cal.App.4th 1263, 1270 [57 Cal.Rptr.2d 314].) We remain "[m]indful of the deference we must accord the Legislature under the rational basis standard" (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 482 [97 Cal.Rptr.2d 334, 2 P.3d 581]), and uphold a statutory classification against an equal protection challenge "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification" (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096]).

■ Sneed and Bell do not contend the child support provision of the MFG statute involves a suspect classification. (See *Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439–440 [87 L.Ed.2d 313, 105 S.Ct. 3249] [suspect classifications include such immutable factors as race, alienage or national origin]; *Darces v. Woods* (1984) 35 Cal.3d 871, 889–890 [201 Cal.Rptr. 807, 679 P.2d 458] [higher level of scrutiny applied to classification based on alienage].) Instead, they argue the MFG statute unconstitutionally infringes on the MFG children's fundamental rights to live with their fathers. However, the MFG statute does not prohibit the MFG children from living with their fathers, but only affects the amount of cash welfare benefits the family will receive. Thus, Sneed and Bell's fundamental right to raise their children in their own home is not implicated. In any event, "a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right" and thus is not subjected to strict scrutiny. (*Regan v. Taxation With Representation of Wash.* (1983) 461 U.S. 540, 549 [76 L.Ed.2d 129, 103 S.Ct. 1997]; *City and County of San Francisco v. Freeman, supra*, 71 Cal.App.4th at p. 873; *Moreno v. Draper* (1999) 70 Cal.App.4th 886, 895–896 [83 Cal.Rptr.2d 82].)

■ Moreover, the MFG statute has no coercive effect so as to make it unconstitutional. Any impact on family living arrangements is unintended, indirect and attenuated. (*King v. McMahon* (1986) 186 Cal.App.3d 648, 662 [230 Cal.Rptr. 911]; see also *N.B. v. Sybinski* (Ind.Ct.App. 2000) 724 N.E.2d 1103, 1108–1109 [MFG-type rule capping family benefits did not infringe on family association by aiding child living with nonparent caretakers rather

than with parents].) "If [a statute's] indirect effects on family living arrangements were enough to subject the statute to heightened scrutiny, then the entire AFDC [now CalWORKs] program might also be suspect since it generally provides benefits only to needy families without two resident parents." (*Bowen v. Gilliard* (1987) 483 U.S. 587, 602, fn. 17 [97 L.Ed.2d 485, 107 S.Ct. 3008].) Although the welfare program may create an incentive for some needy parents to live separately, that is not the goal of the program, nor does it call the program's legitimacy into question. (*Ibid.*) The MFG statute does not implicate any privacy rights.

 The child support provision of the MFG statute challenged by Sneed and Bell does not involve a suspect classification or infringe a fundamental right. Thus, we presume the classification created by the provision is valid if it is rationally related to a legitimate state interest. (*Del Monte v. Wilson* (1992) 1 Cal.4th 1009, 1014 [4 Cal.Rptr.2d 826, 824 P.2d 632].)

## B.

### Rational Relationship Analysis

The MFG statute is rationally related to California's legitimate purposes: to encourage families to provide for their own economic security by participating in the work force and to provide sufficient support and protection for their children, with the goal of ending the cycle of welfare dependence. (§ 11205.) To achieve these purposes, the MFG statute requires the cash aid payment not be increased for additional children born into welfare dependence. The statute's exclusion of child support income from the grant calculation serves as an incentive to noncustodial parents to support their MFG children who are not part of the aid calculation. Consistent with other child support laws, "child support" is defined as payments by a noncustodial parent.

The two classes at issue here—MFG children living with parents and MFG children with noncustodial parents who pay child support—are not similarly situated so as to require the parents' income to be treated identically. "Equal protection applies to ensure that persons similarly situated with respect to the legitimate purpose of the law receive like treatment; equal protection does not require identical treatment." (*People v. Green* (2000) 79 Cal.App.4th 921, 924 [94 Cal.Rptr.2d 355].) The MFG child living with both parents receives the advantages of all of their income and other types of support. The MFG child with a noncustodial parent paying child support receives only the court-ordered child support. The MFG rule reasonably protects children whose parents do not live in the home by creating parity with children whose parents do live in the home.

Moreover, CalWORKs aids families living together, and under both CalWORKs and the MFG statute, income of those family members is counted in calculating the grant. This reflects the economic realities that a custodial parent contributes a significant portion of available resources to the support of the child (Fam. Code, § 4053, subd. (i)) and that all income the family receives is used for common expenses. (*Bowen v. Gilliard, supra,* 483 U.S. at p. 599.) It also reflects " 'the common sense proposition that individuals living with others usually have reduced per capita costs because many of their expenses are shared.' " (*Id.* at pp. 599–600.)

■ We conclude the classification created by the child support provision of the MFG statute is rationally related to a legitimate public purpose. The MFG statute is constitutional as applied to custodial parents supporting their MFG children. Accordingly, Department properly applied the statute to Sneed's and Bell's families and the court did not err in denying Sneed and Bell's writ petitions.[19]

### DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and McDonald, J., concurred.

---

[19] In light of our holding, we need not decide whether Sneed and Bell were entitled to relief by ordinary mandamus or declaratory relief.