Filed 10/6/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANGIE CHRISTENSEN,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILL LIGHTBOURNE, as Director, etc.,<br><br>        Defendants and Appellants. | A144254<br><br>(San Francisco County<br>Super. Ct. No. CPF-12-512070) |

This appeal presents a narrow question about what counts as family income when determining a family's eligibility for cash aid under the California Work Opportunity and Responsibility to Kids Act (CalWORKs) program. (Welf. & Inst. Code, §§ 11200 et seq.)[1]

Here, a CalWORKs applicant, Angie Christensen, lives with her husband and her children. Her husband is the noncustodial parent of additional children, and court-ordered child support is garnished from his income for the benefit of these children who do not live in the applicant's home. Counting the garnished amounts as nonexempt income to the applicant's family, San Mateo County determined the family's income was too high to qualify for CalWORKs cash aid and denied the application. Following an administrative appeal, the California Department of Social Services (Department) affirmed the denial decision.

The applicant then petitioned for writ of mandate challenging the Department's policy of counting child support paid to benefit children who live outside the home as

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

nonexempt income for purposes of CalWORKs (Code Civ. Proc., § 1085) and for writ of administrative mandate seeking to overturn the Department's denial decision (Code Civ. Proc., § 1094.5). She also sought declaratory relief. The trial court granted the petition for writ of administrative mandate and the request for declaratory relief. The trial court found the Department's policy of counting child support payments as nonexempt income was invalid on the grounds it was contrary to regulation, and it resulted in improper "double counting" of income among recipients of aid.

The Department and its Director, Will Lightbourne, (together "appellants") appeal. We conclude that no statute or regulation required the exemption of the husband's garnished child support from the income of applicant's family and, therefore, the Department properly treated such amounts as income in determining the applicant's family's eligibility for CalWORKs cash aid. We reverse the judgment.

## BRIEF OVERVIEW OF CALWORKS

We begin with a brief history of the CalWORKs program, including a discussion of the concepts of income and exemptions relevant to this case.

*Welfare Reform*

In 1996, Congress passed what is commonly referred to as the Welfare Reform Act. Under this law, the federal program Aid to Families with Dependent Children (AFDC) was replaced by Temporary Aid to Needy Families (TANF), which provides states with block funding to distribute to needy families as each state sees fit. (*Sneed v. Saenz* (2004) 120 Cal.App.4th 1220, 1231 (*Sneed*).)

"In 1997, as part of a comprehensive review and overhaul of its welfare system, California created CalWORKs through which it administers TANF block grants. [Citations.] . . . Like the former AFDC program, CalWORKs provides cash grants to families with minor children who meet certain requirements, including limited income and resources, and are deprived of the support of one or both parents due to factors such as absence, disability or unemployment." (*Sneed*, *supra*, 120 Cal.App.4th at p. 1231.) The Legislature adopted the CalWORKs program through Assembly Bill No. 1542 (AB 1542). (*Ibid*.)

2

Under CalWORKs, the Welfare and Institutions Code establishes a schedule of maximum aid payments, with maximum payments varying according to the number of eligible needy persons in the family and by the region of California in which the family lives. (See §§ 11450, 11450.12, 11450.018, 11452.018.) The amount of a family's CalWORKs aid payment is calculated by taking the applicable maximum aid payment for the eligible family members and subtracting the family's nonexempt income.[2] (*Ibid.*)

The Legislature's purpose in enacting CalWORKs was "to increase personal responsibility and encourage financial self-sufficiency for families." (*Sneed*, *supra*, 120 Cal.App.4th at p. 1242.) Compared with the previous welfare program, "CalWORKs provides increased education and training, greater work incentives and time limits on aid."[3] (*Ibid.*) Among the changes made, the Legislature adopted a new method for calculating cash aid amounts, which was "designed to motivate welfare recipients to increase their work efforts. Under the new system, enacted in 1997 and still in effect, aid recipients who increase their work efforts and obtain greater employment income may retain more of the increased income before cash aid is affected." (*Id.* at p. 1232.)

Specifically, section 11451.5, subdivision (a), allows a family to exempt from its income up to the first $225 of its earned income, plus 50 percent of any remaining earned income.[4] This is a more generous earned-income exemption than existed prior to

---

[2] For purposes of determining eligibility for CalWORKs cash aid, families are grouped into "assistance units" or "AUs," which must include at least one eligible child and a care taker relative, and which also include the eligible relatives of the eligible child living in the same home with the child. (§ 11450.16, subds. (a)–(c).) In the parties' briefing, appellants use the term "household" synonymously with assistance unit, and Christensen uses the terms "family," "CalWORKs family," and "assisted family" to refer to her assistance unit. We sometimes use the term "family" to refer to an assistance unit in general, and we refer to Christensen's assistance unit in particular as her "family."

[3] The law also imposed a new requirement that aid recipients participate in welfare-to-work activities (see § 11320.3), and the CalWORKs program is "often described as 'welfare-to-work.' " (*Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 686.)

[4] Section 11451.5's exemption of $225 applies first to any disability-based unearned income (DBI), and any remaining exemption amount applies to earned income. In the present case, Christensen's family had no countable DBI income, so the entire

3

CalWORKs. (See *Sneed*, *supra*, 120 Cal.App.4th at p. 1242.) The AFDC program (which CalWORKs replaced) allowed a family to exempt only the first $30 and one-third of any remaining earned income. The intent "was to provide a greater, more advantageous work incentive, one that rewards additional work efforts and gives welfare recipients a better understanding of the impact that *increased earnings* have on the income of the family and the amount of the grant payment." (*Id*. at p. 1240.)

Also as part of welfare reform, "the Legislature reviewed various statutes adopted during the time the AFDC program was in effect and either repealed, amended or continued those laws as part of the new CalWORKs program." (*Sneed*, *supra*, 120 Cal.App.4th at p. 1240.)

Each county administers CalWORKs under the supervision of the Department. (*Smith v. Los Angeles County Bd. of Supervisors* (2002) 104 Cal.App.4th 1104, 1109 (*Smith*); § 10600.) The Department has adopted regulations and standards to implement CalWORKs, which are found in its Manual of Policies and Procedures (MPP), Eligibility and Assistance Standards. (*Smith*, at p. 1109.)[5]

*Income and Exemptions Under CalWORKs*

As we have mentioned, section 11451.5 provides an exemption of up to the first $225 of earned income, plus half of any remaining earned income. (§ 11451.5, subd. (a).) The statute defines "earned income" as "gross income received as wages, salary, employer-provided sick leave benefits, commissions, or profits from activities such as a business enterprise or farming in which the recipient is engaged as a self-employed

---

$225 exemption applied to the family's earned income. Because this provision applies to DBI and earned income, we sometimes refer to the exemption as the "DBI/earned-income exemption."

[5] These regulations were adopted in accordance with the state Administrative Procedures Act (Gov. Code, §§ 11340 et seq.). (See § 10554.)

individual or as an employee." "Unearned income" is any income that is not classified as either earned income or DBI.[6] (*Id.*, subds. (b)(1) & (3).)

MPP section 44–101(a) defines income for purposes of administering CalWORKs as follows: "Income, generally, is any benefit in cash or in-kind which is reasonably anticipated to be available to the individual or is received by him/her as a result of current or past labor or services, business activities, interests in real or personal property, or as a contribution from persons, organizations or assistance agencies. To be considered in determining the cash aid payment, income must be reasonably anticipated to be available to needy members of the family in meeting their needs during the . . . Payment Period. Subject to this limitation and the exemptions and exclusions, as specified in Section 44–111 of this chapter, such benefits are taken into consideration as income in evaluating the need of the recipient and in determining the amount of cash aid to which the recipient is entitled."

Exemptions from income are provided by statute and regulation. For example, in addition to section 11451.5's DBI/earned-income exemption, MPP section 44–111 lists types of payments or benefits that are exempted or excluded, in whole or in part, from consideration as income for purposes of the CalWORKs program.[7]

*All County Letter No. 97-59: The Department's Policy of Counting Child Support for Children Who Live Outside the Payer's Assistance Unit as Nonexempt Income*

No statute or regulation specifically addresses how to treat child support payments paid by a member of an assistance unit for the benefit of children who live outside the assistance unit. Since 1997, however, the Department has taken the position that such child support payments are not exempted from income.

---

[6] DBI refers to "state disability insurance benefits, private disability insurance benefits, temporary workers' compensation benefits, social security disability benefits, and any veteran's disability compensation." (§ 11451.5, subd. (b)(2).)

[7] Exemptions include a child's earnings from a job training program, (MPP § 44–111.211) income earned from a college work study program (*id.*, § 44–111.24), certain relocation benefits (*id.*, § 44–111.3a), certain tax credits and rebates (*id.*, § 44–111.3k, l), and certain educational grants (*id.*, § 44–111.435).

5

The Department's position is set forth in All County Letter (ACL) No. 97-59, dated October 14, 1997, a letter to all county welfare directors and AFDC program managers. The purpose of the letter was "to provide counties with the instructions they requested for implementing the new grant structure and aid payment provisions of [AB 1542]," the newly-enacted CalWORKs program. (ACL No. 97-59, p. 1.) Under prior law, a family could disregard (i.e., exempt) court-ordered child support paid by family members for children living outside the home. (ACL No. 97-59, p. 3.) ACL No. 97-59 explained that this child-support exemption and other "existing income disregards" were eliminated by AB 1542 and replaced with new exemptions.[8] The letter described in particular the "new income disregard," which "exempts the first $225 of any disability-based unearned income and/or earned income plus 50 percent of any remaining earned income." (ACL No. 97-59, p. 3)

*Repeal of Pre-CalWORKs Regulation on Child Support*

Consistent with its understanding of the changes in the law, the Department also repealed a regulation (former MPP section 44–113.9), which had provided a deduction from income of court-ordered support payments to a child or spouse not in the home. The repeal became effective on July 1, 1998. (ACL No. 98-45.)[9] In the rule-making

---

[8] Specifically, under the heading "Treatment of Income," the Department wrote: "The existing income definitions and treatment of income are retained except for the changes noted below.

"**Income Disregard**  [¶] Effective January 1, 1998, AB 1542 amends the method of determining net nonexempt income (NNI) in the grant computation by *eliminating the existing income disregards and replacing them with new income disregards. The following existing income disregards are eliminated*:  (1) $30 and 1/3 earned income disregards, (2) $90 standard work expense, (3) dependent/child care costs, (4) *court-ordered child*/spousal *support paid by family members to persons outside the home*, and (5) support paid by Non-AU members to others not living in the home who are claimed as federal tax dependents . . . ." (ACL No. 97–59, p. 3, italics added.)

[9] After giving counsel notice of our intent to do so, we take judicial notice of ACL No. 98-45 on our own motion under Evidence Code section 452, subdivisions (c) and (h), and section 459, subdivision (a). (See *California Advocates for Nursing Home Reform v. Bonta* (2003) 106 Cal.App.4th 498, 515, fn. 8 [taking judicial notice of an ACL because

process, the Department explained the child and spousal support "disregards" "that were allowed previously under federal and state law have been *replaced* with disregards of $225 of disability based unearned income and/or earned income and then 50% of the remaining earned income as set forth in Welfare and Institutions Code Section 11451.5."[10]  (Italics added.)

## FACTUAL AND PROCEDURAL BACKGROUND

*Application for Aid*

In October 2010, Christensen applied for CalWORKs cash aid.  Her family consisted of herself, her three children from a prior marriage, her husband, Bruce Christensen, and their three children together.[11]  Christensen received supplemental security income/state supplemental payments (SSI).  Bruce worked part-time and also received unemployment insurance benefits (UIB).  Child support payments were garnished from Bruce's income (both his paychecks and his UIB checks) for his children

---

it "is an official act of an executive department that is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)

[10] In public hearings on the changes to regulations, the Western Center on Law & Poverty, Inc., (Christensen's counsel in this case) took the position that the CalWORKs legislation did not repeal the deductions for child and spousal support to benefit persons who live outside the home.  The Department disagreed, responding, "AB 1542 provides only a $225 and 50% deduction to disability based unearned and earned income.  There is no provision to disregard payment made to support a child or spouse who lives outside the CalWORKs household."

We granted appellants' unopposed request to take judicial notice of the rule-making file, which was not before the trial court.  Christensen now urges us to disregard the document, but she does not dispute that a rule-making file may be the subject of judicial notice.  (E.g., *Engine Manufacturers Association v. California Air Resources Board* (2014) 231 Cal.App.4th 1022, 1035.)  Nor does she explain why she did not raise her objections in a timely manner.

[11] For the sake of brevity, we refer to Bruce Christensen by his first name only. No disrespect is intended.

7

from prior relationships; these children did not live with Christensen and Bruce.[12] Bruce's child support payments were for three children: one child lived with the mother and received aid, one child was an adult and the support payments were for arrearages, and one child was not on assistance, as far as Christensen knew.

San Mateo County denied Christensen's application on the ground the "family's net countable income" exceeded the maximum aid payment (MAP) set by statute for the number of eligible members of the family.[13]

*Administrative Appeal*

Christensen requested a hearing on the denial of her CalWORKs application. The only issue she raised was whether the child support garnished from Bruce's checks should count as income to Christensen's family.

Following an administrative hearing, the administrative law judge (ALJ) issued a proposed decision in Christensen's favor, but it was not adopted. Instead, the Department Director at that time, John Wagner, exercised his authority to issue an alternate decision.

Director Wagner adopted the ALJ's statement of facts, but reached a different legal conclusion. He explained: "[A]ll nonexempt income to the AU is considered available to the AU and is included in determining eligibility for CalWORKs benefits. There is no regulation that exempts child support payments paid by or garnished from an

---

[12] $127.89 was deducted from his biweekly paychecks, and the amount deducted from his UIB checks varied depending on the amount of the UIB payment, which in turn varied based on the amount he earned from his part-time job. Evidence showed no less than $61 was withheld from Bruce's UIB checks per week.

[13] It is not disputed that the applicable MAP was for four persons—Christensen's own three children from a prior marriage and Bruce. (The three children of the Christensen marriage were considered "maximum family grant" children, and so did not count in determining the MAP, and Christensen herself was excluded from the MAP because she received SSI.) The MAP for San Mateo County for a four-person family at the time was $828 per month. The county found Bruce's monthly earned income was $600.17, and other monthly nonexempt income (i.e., his UIB benefits) was $793.12 (a total of $1,393.29 gross income). After subtracting "disregards" (exemptions), the county determined the family's net countable income was $980, which exceeded the applicable MAP of $828.

8

AU member's earned or unearned income. Therefore, the child support payments garnished from [Bruce's] earned income and UIB w[ere] correctly included as nonexempt available income in determining AU's eligibility for CalWORKs benefits." The Director concluded that San Mateo County correctly calculated the nonexempt income to Christensen's family, and denied Christensen's claim.

In reaching his conclusion, the Director relied on the Department's longstanding policy of treating child support payments as nonexempt income to the payer's assistance unit, citing ACL No. 97-59.

*Writ Petition*

In March 2012, Christensen filed a petition for writ of mandate under Code of Civil Procedure sections 1085 (traditional mandate) and 1094.5 (administrative mandate) and complaint for declaratory relief. She sought to overturn the Department's decision and further sought a declaration that, under California law, child support funds paid or garnished under court order for children outside the home are not income available to meet the needs of the children of the home for purposes of the CalWORKs program.

In November 2014, the trial court granted Christensen's petition for administrative mandate (Code Civ. Proc., § 1094.5) and her request for declaratory relief.[14] The court found that the relevant statutes did not provide an exhaustive list of items that are exempt in calculating income for purposes of determining CalWORKs eligibility. Relying on MPP section 44–101(a), the court concluded that "child support that is transferred to children that live outside the home is not available to needy members of the family." The court also found the Department's interpretation of the governing scheme was contrary to

---

[14] At Christensen's request, the court took judicial notice of documents including portions of AB 1542, various sections of the MPP, Department ACLs, and other Department documents related to CalWORKs. Appellants requested the court take judicial notice of Senate Bill No. 1233 (Stats. 1999, ch. 933) (SB 1233), Senate Bill No. 1041 (Stats. 2012, ch. 47) (SB 1041), and MPP § 44–100.

9

section 11005.5 and observed, "Double counting should not occur among recipient groups."[15]

The trial court, however, denied Christensen's request for traditional mandate (Code Civ. Proc., § 1085) on the ground "the statutory landscape regarding the exemption was unclear and [Christensen] does not cite a clear ministerial statutory duty."

The court set aside the Director's alternate decision, and declared, "[The Department's] policy to count court-ordered child support payments as available income of the CalWORKs applicant and recipients who pay the support is invalid . . . ."

Appellants timely appealed.

## DISCUSSION

### I.      Standard of Review

Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency. Because a decision denying public assistance affects fundamental vested rights, the trial court exercises its independent judgment in reviewing the decision. (*Frink v. Prod* (1982) 31 Cal.3d 166, 180.) We review "the record to determine whether the trial court's findings are supported by substantial evidence." (*LaGrone v. City of Oakland* (2011) 202 Cal.App.4th 932, 940.)

However, "where the facts are undisputed, the reviewing court faces a question of law. 'On questions of law arising in mandate proceedings, we exercise independent judgment.' [Citation.] In those circumstances, the trial and appellate courts perform the same function." (*Santa Clara Valley Transp. Authority v. Rea* (2006) 140 Cal.App.4th

_____

[15] Section 11005.5 provides: "All money paid to a recipient or recipient group as aid is intended to help the recipient meet his individual needs or, in the case of a recipient group, the needs of the recipient group, and is not for the benefit of any other person. Aid granted under [state programs including CalWORKs] to a recipient or recipient group and the income or resources of such recipient or recipient group shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group." (Fn. omitted.)

10

1303, 1313.)[16]  Interpretation of a statute or regulation is a question of law subject to independent review.  (*Pacific Gas and Electric Company v. Public Utilities Commission* (2015) 237 Cal.App.4th 812, 840.)  "[W]e apply our independent review without reference to the trial court's actions."  (See *Santa Clara Valley Transp. Authority v. Rea*, p. 1313.)[17]

In this case, the issue is whether the Department's interpretation of CalWORKs statutes and regulations is valid.  Generally, "[a]n agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 (*Yamaha*).) We "independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation."  (*Ibid*.)

In *Yamaha*, our high court identified "two broad categories of factors relevant to a court's assessment of the weight due an agency's interpretation."  (*Yamaha*, *supra*, 19 Cal.4th at p. 12.)  The first category of factors relate to the agency's " 'comparative interpretive advantage over the courts,' " and the second category includes factors " 'indicating that the [agency's] interpretation in question is probably correct."  (*Ibid*.)

---

[16] "Similarly, in a declaratory relief action questions of fact are generally reviewed for substantial evidence and questions of law are reviewed de novo."  (*K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 174.)

[17] Appellants assert the standard of review for a petition of administrative mandate is abuse of discretion.  "Abuse of discretion" may be "established if the [Department] has not proceeded in the manner required by law" (Code Civ. Proc., § 1094.5, subd. (b)), and Christensen essentially argues the Department did not proceed in a manner required by law in counting Bruce's garnished child support as income to her family.  Still, the question whether the Department's policy of counting child support violates statute or regulation is one of law subject to de novo review.  (See *California Teachers Assn. v. Butte Community College Dist.* (1996) 48 Cal.App.4th 1293, 1299 [in review of petition for administrative mandate, "[w]here the pertinent facts are undisputed, and the appellant claims the agency exceeded its jurisdiction and failed to proceed in a manner required by law, our standard of review is de novo"].)

11

"In the first category are factors that 'assume the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion. A court is more likely to defer to an agency's interpretation of its own regulation than to its interpretation of a statute, since the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another.' [Citation.] The second group of factors . . . includes [1] indications of careful consideration by senior agency officials . . ., [2] evidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' [citation] . . ., and [3] indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted. If an agency has adopted an interpretive rule in accordance with Administrative Procedure Act provisions—which include procedures (e.g., notice to the public of the proposed rule and opportunity for public comment) that enhance the accuracy and reliability of the resulting administrative 'product'—that circumstance weighs in favor of judicial deference." (*Yamaha*, *supra*, 19 Cal.4th at pp. 12–13.)

More recently, our Supreme Court explained the task of a reviewing court considering an agency's interpretation of the law: "While we assign considerable importance to the agency's views, we also retain ultimate responsibility for interpreting the relevant statute. [Citation.] If the agency's interpretation is clearly erroneous or unauthorized under the statute, we will not give effect to its understanding of the statute. [Citation.] . . . But where the [agency's] conclusion is not plainly at odds with the statutory scheme, we assign great weight to it." (*Larkin v. W.C.A.B.* (2015) 62 Cal.4th 152, 158 (*Larkin*).)

## II. Counting Court-Ordered Child Support as Nonexempt Income

### A. *Deference to the Department's Longstanding Policy*

As we have seen, the CalWORKs statutes and regulations do not specifically prescribe how to treat child support paid by a noncustodial parent in determining the nonexempt income of the paying parent's assistance unit. The Department's position is

straightforward. Bruce's earnings from work and his UIB payments qualify as income, and the child support garnished from Bruce's income counts as nonexempt income to Christensen's family because no statute or regulation expressly exempts it from income. Before welfare reform, there was an exemption for child support paid to benefit children who lived outside the home, but CalWORKs eliminated that exemption (along with others) and replaced it with a more generous earned-income exemption.

Consideration of the two broad categories of factors described in *Yamaha* leads us to accord great weight to the Department's interpretation of the law. First, as the agency responsible for both adopting regulations and standards to implement the CalWORKs program and supervising counties that run the program, the Department clearly has expertise and technical knowledge in the administration of CalWORKs. It is also undeniable that the CalWORKs statutes and regulations are technical, complex, and entwined with issues of fact and policy. Second, the Department announced its policy on the treatment of child support in an ACL when CalWORKs was first enacted, and it has consistently maintained its interpretation of the law since 1997. "[W]here the agency has special expertise and its decision is carefully considered by senior agency officials, that decision is entitled to correspondingly greater weight." (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 436 [describing deference due to the Department's interpretation of an adoption statute, which was set forth in an ACL].) Further, our Supreme Court has observed, " ' "Consistent administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory machinery into effect, is entitled to great weight and will not be overturned unless clearly erroneous" ' " (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1012) or unauthorized (*Larkin*, *supra*, 62 Cal.4th at p. 158).

Thus, we should not overturn the Department's policy of counting child support as income to the payer's assistance unit, which it has maintained since the inception of the CalWORKs program 20 years ago, unless it is clearly erroneous or unauthorized under the applicable statutes and regulations. The trial court found the Department's policy was invalid on two separate grounds. First, it found that counting court-ordered child support

as income to the payer's assistance unit would conflict with MPP section 44–101(a), which provides that income must be "reasonably anticipated to be available to needy members of the family in meeting their needs." Second, the court found the Department policy was contrary to section 11005.5, suggesting the policy resulted in "double counting." Christensen, of course, agrees with the trial court, and further argues the Department's policy conflicts with the legislative history and the purpose of the CalWORKs program. We consider each of these arguments.

B. *"Reasonably Anticipated" Income "Available to Needy Members of the Family in Meeting Their Needs"*

Christensen argues the Department's policy violates section 11265.2 and MPP section 44–101(a), both of which provide that income must be "reasonably anticipated."[18] Appellants respond that Christensen misunderstands the purpose of considering a family's "reasonably anticipated" income in determining eligibility for CalWORKs cash aid.

Appellants maintain that "reasonably anticipated" income under section 11265.2 and MPP section 44–101 is not intended to refer to a family's take-home or net income. Instead, the Legislature enacted section 11265.2 to adopt a new budgeting system, and the Department, in turn, adopted MPP section 44–101 to implement this new system. According to appellants, the phrase "reasonably anticipated" is intended to signify that the income determination is forward-looking rather than retrospective—family income is

---

[18] Section 11265.2 provides for prospective determination of cash aid payments based on income that is "reasonably anticipated" for the reporting period. (§ 11265.2, subd. (a).) MPP section 44–101(a) provides that income "generally, is any benefit in cash or in-kind which is *reasonably anticipated* to be available . . . ." (Italics added.)

Christensen also claims the Department's position violates sections 11450 and 11451.5. However, sections 11450 and 11451.5 do not contain the phrase "reasonably anticipated" and do not address whether income is "available" to meet the needs of the family. It appears that any claim of violation of section 11450 and 11451.5 is therefore dependent upon a showing that the Department's policy on determining income violates either 11265.2 and MPP section 44–101(a).

"reasonably anticipated" if it is reasonably expected to continue in the coming budgeting period.

In support of their position, appellants explain that, when CalWORKs was enacted in 1997, family income was determined based on monthly reporting. (See Assem. Bill No. 444 (2001-2002 Reg. Sess.) 6 Stats. 2002, Summary Dig., p. 466.) In 2002, the Legislature changed the CalWORKs program so that family income, eligibility, and aid amounts would be determined based on prospective budgeting. (*Ibid*.; see former § 11265.2, added by Stats. 2002, ch. 1022, § 32.)[19] The law now requires that "[t]he grant amount a recipient shall be entitled to receive for each month of the semiannual reporting period shall be *prospectively determined* as provided by this section. . . . The grant shall be calculated using the income that the county determines is reasonably anticipated for the *upcoming* semiannual *period*." (§ 11265.2, subd. (a), italics added.) Section 11265.2, subdivision (b), provides, "For the purposes of the semiannual reporting, prospective budgeting system, income shall be considered to be 'reasonably anticipated' if the county is reasonably certain of the amount of income and that the income will be received during the semiannual reporting period. The county shall determine what income is 'reasonably anticipated' based on information provided by the recipient and any other available information."[20]

When the Legislature adopted prospective budgeting for CalWORKs, it instructed the Director to adopt regulations establishing a budgeting system consistent with the new

___

[19] "This bill would revise CalWORKs recipient reporting requirements. It would also require that counties make eligibility determinations based on a quarterly system, rather than a monthly system, and would provide for the implementation of a *prospective budgeting system*, to be applied on a quarterly basis." (See Assem. Bill No. 444 (2001–2002 Reg. Sess.) 6 Stats. 2002, Summary Dig., p. 466, italics added.)

[20] CalWORKS currently uses a semiannual reporting period. (§ 11265.2.) When CalWORKS initially changed from monthly reporting to prospective budgeting, the Legislature adopted a quarterly reporting period. (See former § 11265.2, added by Stats. 2002, ch. 1022, § 32.) The only difference between former section 11265.2, subdivision (b), and the current version of subdivision (b) is the change in reporting period from quarterly to semiannual.

law on prospective budgeting. (§ 11450.5.) As a result, MPP section 44–101(a) defines income, generally, as a benefit that is "reasonably anticipated to be available" during the upcoming reporting period.

In short, appellants argue the concept of "reasonably anticipated" income serves as a budgeting tool for a family deemed eligible to continue on aid for the upcoming reporting period, and such "reasonably anticipated" income under section 11265.2 and MPP section 44–101 refers to gross income before any potential exemptions or deductions are subtracted. Given the legislative history, we find the Department's interpretation of "reasonably anticipated" income as used in the CalWORKs statute and regulation reasonable and worthy of deference.[21]

Christensen next argues the Department's policy violates MPP section 44–101(a) because court-ordered child support is not "available to needy members of the family in meeting their needs."[22] We are skeptical of Christensen's interpretation of the phrase "available to needy members of the family in meeting their needs," however, because it would apply equally to *any* deduction or withholding from paychecks.

As appellants point out, by Christensen's reasoning, "any applicant for aid who has money deducted from his [or her] paycheck regarding any type of debt, such as garnishment of wages by the IRS for delinquent past taxes owed or for debts owed to a creditor, could argue under the same reasoning that such funds are not 'available' to meet their household[']s needs and should not be counted as 'income' in determining

---

[21] We also note that section 11451.5, subdivision (b)(1), expressly defines "earned income" as "*gross* income received as wages, salary, [etc.]." (Italics added.) This definition supports the Department's position that "income" generally refers to *gross* income before any deductions or exemptions are considered.

Nothing in the language or history of MPP section 44–101(a) suggests it was intended to supplant the definitions of income (earned, DBI, and unearned) of section 11451.5.

[22] Recall MPP section 44–101(a) provides, "To be considered in determining the cash aid payment, income must be *reasonably anticipated to be available to needy members of the family in meeting their needs* during the . . . Payment Period." (Italics added.)

CalWORKs aid." The problem with Christensen's position is it contains no limiting principle. If garnished child support is not income under MPP section 44–101(a) because such amounts are not "available to needy members of the family in meeting their needs," then any amounts garnished from income would likewise not count as income. This result would mean that garnishments for any debts could be exempted from income, a potentially limitless exemption which finds no support in the statutory structure or purpose of CalWORKs.

We find the reasoning of the Supreme Court in *Heckler v. Turner* (1985) 470 U.S. 184 instructive. In that case, a class of AFDC recipients challenged state regulations that defined "income" as gross income, thereby including mandatory payroll deductions as income to welfare recipients. (*Id*. at pp. 187–188.) An intermediate court agreed with the plaintiffs and held that mandatory tax withholdings could not be considered income, relying on "the principle of 'actual availability.' " (*Id*. at p. 199.) The Supreme Court unanimously rejected this holding because the intermediate court offered no limiting principle for its rationale. The Supreme Court observed, "Yet sums mandatorily withheld for obligations such as union dues, medical insurance, or retirement programs no more pass through the wager earner's hands than do mandatory tax withholdings. Insofar as the Court of Appeals' definition pivots on *availability to meet family expenses*, any distinction between various species of payroll withholdings would be 'metaphysical indeed.' [Citation.] Likewise, the expenditure of funds on other work-related expenses, such as transportation, meals, and uniforms, just as effectively precludes their use for the needs of the family. . . . There is no reason, then, why the actual availability principle, once applied to exclude mandatory tax withholdings from the definition of income would not similarly apply to other mandatory payroll withholdings and other standard work expenses, both of which also render a portion of a wage earner's income unavailable to meet the recipient family's need." (*Id*. at p. 202, italics added.) Similarly, in this case, Christensen's argument offers no limiting principle.

Christensen responds that "ordinary consumer debts such as for rents, credit cards or other expenses collected via garnishment" are different from court-ordered child

17

support because they could "legitimately be assumed to benefit needy members of the family." We are not persuaded. To the extent Christensen suggests any debt owed by a member of a CalWORKs family must be assumed to have been incurred to buy food or pay rent or otherwise directly benefit all the members of the family, we see no reason for such an assumption. A person's income may be garnished based on consumer debt incurred before the person joined the family, a judgment arising from a car accident, or any other reason unrelated to benefiting members of the family. If, on the other hand, Christensen's position is that garnishment to meet debt obligations inherently benefits a member of the CalWORKs family, then garnishment to meet child support obligations similarly benefits a member of the family. (Cf. *Peura By and Through Herman v. Mala* (9th Cir. 1992) 977 F.2d 484, 491 [paying child support "arguably" meets the needs of the payer].) We reject Christensen's argument because she cannot meaningfully distinguish child support obligations from any other debt that may lead to garnishment of income.

In support of the Department's interpretation of income under MPP section 44–101(a), appellants cite MPP section 44–102.1. This regulation provides, "All reasonably anticipated income *shall be considered to be available to meet the needs of the AU* during the . . . Payment Period and *shall be considered* when determining eligibility and grant amount . . . ." (Italics added.) Thus, while MPP section 44–101(a) states that "income must be reasonably anticipated to be available to needy members of the family in meeting their needs," in order to be considered in determining CalWORKs eligibility, MPP section 44–102.1 specifies that all "reasonably anticipated income" is, by definition, "available to meet the needs of the" family.

Christensen argues that appellants' reasoning is circular and the Department's interpretation of MPP section 44–101 renders certain phrases surplusage. Appellants respond that MPP section 44–101(a) provides a general definition of "income," while MPP section 44–102.1 pertains to "availability of income." They argue a specific regulation providing a consistent interpretation of what constitutes "available" income is not surplusage.

18

We must give the regulation "a reasonable and common sense interpretation consistent with the apparent purpose and intention of the agency, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity." (*Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 29.) And, as we have discussed, the Department is entitled to greater deference in the interpretation of its own regulations, since it is " 'intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another.' " (*Yamaha*, *supra*, 19 Cal.4th at p. 12.) Here, appellants have offered a reasoned explanation for the Department's interpretation of its own regulation, and Christensen's contrary interpretation of MPP section 44–101(a) would result in *all* mandatory garnishments from income being exempted from income in determining CalWORKs eligibility. Yet, this cannot be what the Department intended when it adopted MPP section 44–101(a). Under these circumstances, we defer to the Department's interpretation of "available" income under MPP section 44–101(a).

C. *Section 11005.5 and "Double Counting"*

Christensen contends the Department's policy of counting garnished child support as income to the payer's assistance unit "results in counting the same income twice" in violation of section 11005.5 and *Rogers v. Dietrich* (1976) 58 Cal.App.3d 90 (*Rogers*).[23] We disagree.

In *Rogers*, a group of general assistance (GA) applicants and recipients sued five counties, challenging the counties' practices in making GA eligibility determinations. In these counties, if a GA applicant or recipient resided with a person (such as a spouse,

---

[23] Again, section 11005.5 provides: "All money paid to a recipient or recipient group as aid is intended to help the recipient meet his individual needs or, in the case of a recipient group, the needs of the recipient group, and is not for the benefit of any other person. Aid granted under this part or Part A of Title XVI of the Social Security Act [Supplemental Security Income under 42 U.S.C. §§ 1381 et seq.] to a recipient or recipient group and the income or resources of such recipient or recipient group shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group." This "part" refers to Part 3 of Division 9 of the Welfare and Institutions Code and now includes the CalWORKs program.

child, or parent) who received aid (such as SSI), that person's individual aid would be considered in determining the applicant or recipient's eligibility for GA and the amount of any GA payment. The plaintiffs argued this practice violated section 11005.5. (*Rogers, supra,* 58 Cal.App.3d at pp. 93–95.) The Court of Appeal agreed. After reviewing the history of section 11005.5, the court reasoned, "Analysis of the various amendments . . . reveals the Legislature's intent to insure that aid paid (1) is for the individual needs of its recipient, (2) is not for the benefit of any other person, and (3) shall not be viewed or treated as income available to any other person. To treat one person's aid as a reason to deny eligibility or to reduce assistance to which another is entitled amounts to defiance of the legislative proscription." (*Id.* at p. 101, fn. omitted.)

*Rogers* held that considering one person's "aid" in denying or reducing another person's "aid" violates section 11005.5, and "aid" is expressly defined in the Welfare and Institutions Code as "financial assistance provided to or in behalf of needy persons under the terms of this division, including direct money payments and vendor payments." (§ 10052.) Here, however, Christensen does not claim that any family's CalWORKs cash aid is being considered to deny another person or family CalWORKs aid. *Rogers* simply does not apply to the facts of this case because Bruce's garnished child support is not "aid."

Christensen also claims that the Department's policy violates section 11005.5's advisement that "the *income or resources* of [an aid] recipient or recipient group shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group." (Italics added.) She argues the amount of Bruce's income that is garnished to pay child support for his noncustodial child receiving aid is also considered income to that child's assistance unit.[24] Christensen's argument fails because child

---

[24] Recall that $127.89 was deducted from Bruce's biweekly paychecks and about $61 was garnished from his weekly UIB checks. This works out to about $541.43 per month garnished for three children. Assuming the garnishment is divided equally among the children, about $180.48 per month is garnished from Bruce's income to support his noncustodial child who receives aid with that child's mother.

20

support paid to benefit a child living in a family receiving CalWORKs aid is not generally counted as income to that child's family.[25]

Federal and state law require that CalWORKs applicants assign their rights to any child support payments to the county and state in order to receive CalWORKs aid. (See 42 U.S.C. § 608, subd. (a)(3); § 11477, subd. (a)(1)(B) [as a condition of eligibility for aid, each applicant or recipient applying after September 30, 2009, shall "assign to the county any rights to support from any other person the applicant or recipient may have on his or her own behalf, or on behalf of any other family member for whom the applicant or recipient is applying for or receiving aid"].) Thus, child support from a noncustodial parent for the benefit of a child receiving CalWORKs aid is "paid directly to the local child support agency and shall not be paid directly to the family." (§ 11457, subd. (a).)

The law provides a pass-through of the first $50 of any amount of child support collected each month on behalf of a child in a CalWORKs family and that amount is *not* counted as income to the family. (See MPP § 44–111.47; former § 11475.3, as amended by Stats. 1999, ch. 478, § 27 ["The first fifty dollars ($50) of any amount of child support . . . shall be paid to a recipient of aid under this chapter . . . and shall not be deducted from the amount of aid to which the family would otherwise be eligible."]; Fam. Code, § 17504 [same].) Aside from the first $50 paid to the recipient family, the balance of child support collected on behalf a child in a CalWORKs family is distributed among the county, state, and federal government (see §§ 11457, subd. (b), 11487, 11487.1) and is *not* considered income to the recipient family. (Decl. of Shawn Dorris, Program Policy Manager of the CalWORKs Eligibility Bureau, ¶22.)

Christensen asserts that "[f]unds *received* as child support are considered unearned income, as they are not earned income and are not [DBI]." But, as we have seen,

---

[25] Underpinning Christensen's argument is the premise that counting garnished child support as income to the child receiving the child support and also counting that amount as income to the payer's family would violate section 11005.5. To be clear, we are *not* deciding that this a correct interpretation of section 11005.5. We only assume Christensen's premise for the sake of argument and conclude there is still no violation of section 11005.5.

21

recipients of CalWORKs aid must assign their rights to child support to the county and state and any garnished child support payments are distributed among various government agencies. Therefore, child support is not received by families receiving CalWORKs cash aid and is not counted as income to them.

There are two exceptions to the general rule that child support paid on behalf of a child is not treated as income to the child's family. One exception is for child support arrears that accumulate during a period when a family is not receiving CalWORKs cash aid. We have seen that, in order to receive CalWORKs cash aid, a family must assign any child support owed to children of the family to the county (and those amounts are disbursed to various levels of government). But if the county receives child support for arrears that accrued *before* the family started receiving aid, such arrears are disbursed directly to the family, and those amounts are considered income to the family. Another exception arises when the custodial parent is ineligible for CalWORKs aid because he or she has received aid under CalWORKs or any other state's TANF program for a cumulative total of 48 months. (§ 11454.) In this situation, only the children in the family may receive CalWORKs cash aid; this is referred to as a "safety-net" case. In safety-net cases, child support payments are directed to the family, and the payments (aside from the $50 monthly pass-through) are treated as unearned income to the family. (See § 11477, subd. (c).)

But Christensen does not claim that the assistance unit that includes Bruce's noncustodial child who is receiving aid falls into either of these exceptions. Nor is there evidence in the record showing either that the amounts garnished from Bruce were for pre-aid arrears or that the child receiving aid was a safety-net child. Accordingly, it cannot be said that Bruce's garnished child support payments were considered income to the assistance unit of the child receiving aid, and Christensen's "double counting" argument fails.

Christensen tries to avoid this result by arguing that a factual finding of "double counting" was made in this case. She asserts, "The ALJ, the [Department] Director, and the trial court all made the same factual finding: [The Department's] policy at issue

22

results in double counting of income." This argument is too clever by half. Neither the Director nor the trial court made a finding of fact as claimed by Christensen.

In his alternate decision, the Director restated almost verbatim the "Statement of Facts" from the ALJ's proposed decision, while rejecting the ALJ's legal conclusion. Under the heading "Statement of Facts," the ALJ had described Christensen's testimony at the hearing in the following paragraph: "The claimant testified that the garnished child support is for one child currently receiving aid with the child's mother, for arrearages for [a second] child who is now an adult, and for a third child who is not on assistance as far as the claimant knows. *To count the child support as income to claimant's AU would result in the income being counted in computing the eligibility and grant for the child currently receiving cash assistance and the same income being counted for the claimant's AU.*" (Italics added.) Christensen argues the last sentence of the paragraph is a finding of fact that the garnished child support for the benefit of the noncustodial child receiving aid was counted as income to that child. Appellants respond that this statement is not a finding of fact but a description of Christensen's legal argument. Considering the import and the context of Director's alternative decision, we agree with appellants. As to the trial court's decision, the court reached a legal conclusion that the Department's policy violated section 11005.5, but it made no factual findings in support of this conclusion.

In short, we reject Christensen's argument that the Director made a factual finding of "double counting" in this case.

D.      *Remaining Arguments*

Christensen's remaining arguments do not establish that the Department's policy is clearly erroneous or unauthorized.

1.      *Section 11157*

In their opening brief, appellants note that no statute or regulation specifically calls for exemptions of child support to children who do not live in the assistance unit. They argue, "Had the Legislature intended to require the Department to deduct all court-

23

ordered child support payments to children outside the home from the income of the non-custodial parent, it would have said so explicitly."[26]

In response, Christensen points out that an exemption for child support existed prior to the enactment of CalWORKs. She cites section 11157, which provides in part, "Except as otherwise provided . . . 'income' shall be deemed to be the same as applied under the [AFDC] program on August 21, 1996 . . . ." She argues, "Given that a deduction for garnished child support existed when the Legislature created CalWORKs and [CalWORKs] explicitly defined income to be the same as under the AFDC program except for new exemptions, it is unreasonable for [the Department] to claim AB 1542 ended the deduction for garnished child support under the CalWORKs program."

This argument lacks merit. A provision that the definition of "income" remains the same does not mean the deductions, disregards, and exemptions remain the same. As the Department explained in ACL No. 97-59, AB 1542 eliminated "existing income disregards" and replaced them with new exemptions, most notably, section 11451.5's DBI/earned-income exemption. Moreover, CalWORKs was intended to establish a "*simplified* grant calculation method [that] was designed to create a greater incentive for welfare recipients to earn additional income and thus to assist families in becoming self-sufficient more quickly." (*Sneed*, *supra*, 120 Cal.App.4th at p. 1240, italics added.) The grant calculation would not be more simplified if new exemptions were adopted yet all the prior deductions remained in effect.

2.    *Legislative History*

Christensen cites an Enrolled Bill Report for AB 1542 prepared by the Department and a document entitled "Major Items of Welfare Reform Contained in AB 1542." She observes that neither report made any mention of a repeal of the child-support disregard.

---

[26] Appellants cited as an example, the CalFresh program (formerly known as the Food Stamp Program (*Pich v. Lightbourne* (2013) 221 Cal.App.4th 480, 485)), which under federal law excludes from income "child support payments made by a household member to or for an individual who is not a member of the household if the household member is legally obligated to make the payments" (7 U.S.C. § 2014, subd. (d)(6)).

24

But the silence of these reports on the treatment of child support does not demonstrate any conflict in the Department's understanding that AB 1542 eliminated the child-support exemption. Certainly, these reports are insufficient reason to overturn the Department's policy, which it has maintained since 1997. Christensen notes that the Enrolled Bill Report provides, under the heading "Grant Structure: Child Support, Disregard" "The amount paid shall not be considered as income or resources for the purposes of calculating the grant amount." But this statement follows a description of the county collecting child support and paying $50 to the receiving family. It is obvious in context that the statement applies to the family of the child for whom child support is paid, not the family of the payer of child support. Finally, Christensen quotes the following statement from Legislative Counsel's digest on AB 1542: "By increasing amounts of income and resources that will not be considered in determining CalWORKs recipient eligibility, the bill would increase the class of persons eligible for the CalWORKs program . . . ." (Stats. 1997, ch. 270, p. 3.) This refers to the more generous earned-income exemption provided under CalWORKs (see *Sneed*, *supra*, 120 Cal.App.4th at p. 1242), and does not undermine the Department's policy on child support payments.

### 3. *Policy Considerations*

Finally, Christensen contends the Department's policy contravenes one of the legislative purposes of CalWORKs, to "provide sufficient support and protection" to poor California children, quoting section 11205. In full, this statute provides: "The Legislature finds and declares that the family unit is of fundamental importance to society in nurturing its members, passing on values, averting potential social problems, and providing the secure structure in which citizens live out their lives. Each family unit has the right and responsibility to provide for its own economic security by full participation in the work force to the extent possible. Each family has the right and responsibility to provide sufficient support and protection of its children, to raise them according to its values and to provide every opportunity for educational and social progress." (§ 11205.) There is nothing in this legislative statement requiring that child support be exempted

from a payer's assistance unit. (It could be argued instead that the legislative statement demonstrates a noncustodial parent has the "responsibility to provide for" his or her family, including children who do not live in the home.) As we have seen, the CalWORKs statutes and regulations are technical and complicated, and the Department's policy of not exempting child support from the income of the payer's assistance unit is based on a reasonable interpretation of the statutes and regulations. Considerations of policy do not dictate a different result.

E.     *Conclusion*

Since the Legislature first adopted CalWORKs 20 years ago, the Department has consistently maintained that court-ordered child support counts as income to the payer's family in determining the family's CalWORKs eligibility and aid amount. This interpretation of the CalWORKs statutes and its own regulations (set forth in writing in ACL No. 97-59) is entitled to deference, and we conclude the Department's interpretation is neither erroneous nor unauthorized in this case. Accordingly, the trial court erred in granting Christensen's petition for writ of administrative mandate and in granting declaratory relief.

**DISPOSITION**

The judgment is reversed. On remand, the trial court shall vacate its writ of mandate and order for declaratory relief, and enter a new judgment denying the petition for writ of administrative mandate and complaint for declaratory relief. The parties shall bear their own costs on appeal.

_____

Miller, J.

We concur:

_____

Kline, P.J.

_____

Richman, J.

A144254, *Christensen v. Lightbourne*

27

Trial Court:  Superior Court of San Francisco

Trial Judge:  Hon. Ernest H. Goldsmith


Attorneys for Appellants
Kamala D. Harris
Attorney General
Xavier Becerra
Attorney General
Julie Weng-Gutierrez
Senior Assistant Attorney General
Susan M. Carson
Supervising Deputy Attorney General
Jennifer A. Bunshoft
Deputy Attorney General


Attorneys for Respondent
Legal Aid Society of San Mateo County
Hope G. Nakamura
Trinh Phan

Western Center on Law & Poverty
Stephanie E. Haffner
Richard A. Rothschild